IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keith Horvath,                                         :
                    Petitioner                        :
                                                      :
            v.                                        :
                                                      :
Unemployment Compensation Board                       :
of Review,                                            :      No. 837 C.D. 2019
                    Respondent                        :      Submitted: November 22, 2019


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                FILED:  January 30, 2020


            Keith Horvath (Claimant), pro se, petitions this Court for review of the

Unemployment Compensation (UC) Board of Review's (UCBR) May 8, 2019 order

affirming the Referee's decision denying UC benefits under Section 402(e) of the UC

Law (Law).[1]  Claimant essentially presents one issue for this Court's review: whether

the UCBR erred by concluding that Claimant committed willful misconduct.[2]  After

review, we affirm.

            Claimant was employed by World Energy LLC (Employer) as a full-

time laboratory technician from February 28, 2018 until January 29, 2019, when

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(e) (referring to willful misconduct).

[2] Claimant states three issues in his Statement of the Questions Involved: (1) whether the
income Claimant helped World Energy LLC (Employer) accrue outweighs any detriment caused by
Claimant's tardiness; (2) whether Claimant's financial need and distance from work outweigh
Employer's detriment arising from Claimant's tardiness; and (3) whether Employer's tardiness
policy was uniformly applied to all employees.  *See* Claimant Br. at 5.  Because these issues are
subsumed in whether the UCBR erred by concluding that Claimant committed willful misconduct,
they will be addressed therein.

Employer discharged him for excessive tardiness. Employer had an Attendance and Punctuality Policy (Policy) that specified: "An employee is deemed to be tardy when he/she: [f]ails to report for work at the assigned/scheduled work time[,] . . . [and/or] [a]rrives to work past his/her scheduled start time." Certified Record (C.R.) Item 8, Notes of Testimony, March 29, 2019 (N.T.) at 6, Ex. 1. Employees were subject to progressive discipline for violating the Policy, up to and including discharge. On March 5, 2018, Claimant signed an acknowledgement that he understood the Policy. *See* N.T. Ex. 1 at 1. Employer terminated Claimant's employment on January 29, 2019, after he was late for work 14 times between June 2018 and January 2019.

Claimant applied for UC benefits. On March 4, 2019, the Harrisburg Overflow Center (UC Service Center) determined that Claimant was not eligible for UC benefits due to his willful misconduct, pursuant to Section 402(e) of the Law. Claimant appealed and a Referee hearing was held on March 29, 2019. On April 2, 2019, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR which, on May 8, 2019, adopted the Referee's findings and conclusions and affirmed the Referee's decision. Claimant appealed to this Court.[3]

Initially,

> Section 402(e) of the Law provides that an employee is ineligible for [UC] benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in a[] [UC] case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior

---

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Sipps v. Unemployment Comp. Bd. of Review*, 181 A.3d 479, 481 (Pa. Cmwlth. 2018) (quoting *Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000) (citation and emphasis omitted)).

Where willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and [] the employee was aware of the rule. Once employer meets this burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule.

*Sipps*, 181 A.3d at 482 (quoting *Weingard v. Unemployment Comp. Bd. of Review*, 26 A.3d 571, 574-75 (Pa. Cmwlth. 2011) (citation omitted)). "[T]he law is clear that habitual tardiness, particularly after warnings, is sufficient evidence to sustain a finding of willful misconduct." *Markley v. Unemployment Comp. Bd. of Review*, 407 A.2d 144, 146 (Pa. Cmwlth. 1979).

Claimant argues that the UCBR erred by concluding that Claimant committed willful misconduct. Claimant admits in his brief to this Court that he "violate[d] [Employer's] tardiness [P]olicy which he knew would lead to his [employment] termination." Claimant Br. at 6; *see also* Claimant Br. at 8. Claimant nevertheless argues that the UCBR erred by concluding that he committed willful misconduct, when his efforts on Employer's behalf and his need for steady financial income outweighed any detriment Employer may have experienced due to his tardiness, and because Employer did not uniformly apply its Policy.

At the Referee hearing, Employer's Assistant Plant Manager Joshua Fleet (Fleet) testified that the Policy describes progressive discipline for tardiness,

with five occurrences in a 12-month period leading to suspension or termination.[4] Fleet explained that the consequence after two occurrences was a verbal warning, three occurrences resulted in a written warning, the fourth occurrence brought a suspension, and a fifth occurrence was either another suspension or discharge. *See* N.T. at 6-7.

Fleet recalled that Claimant was late for work on June 3, August 8, 11, 17, 18, 19, 20 and 21, October 27, December 9, 22 and 27, 2018, and January 5, 20 and 29, 2019. *See* N.T. at 7-12. Fleet declared that Employer suspended Claimant after the October 27, 2018 incident. *See* N.T. at 11. Fleet further recounted that Employer issued Claimant a written warning on December 22, 2018, stating that his next tardy incident within 90 days would result in his discharge. *See id.* Claimant thereafter violated the warning on December 27, 2018, January 5 and 20, 2019.[5] *See id.* Claimant was also late on January 29, 2019, the day Fleet had already planned to terminate Claimant's employment for tardiness. *See* N.T. at 8, 12. Fleet related that Claimant's tardiness does not affect Employer's productivity but, rather, required the employee who worked the previous shift to continue to work until Claimant reported to work and for Employer to pay overtime. *See* N.T. at 15-16.

Claimant testified that he worked 12-hour shifts for Employer, from 6:00 a.m. to 6:00 p.m., rotating two or three days on and two days off.[6] Claimant admitted that he was tardy on the specified days and, except for January 20, 2019, when he was delayed due to a flat tire, he was late for work because of traffic or because he overslept. *See* N.T. at 13-14. When the Referee asked why he did not get up earlier

---

[4] Each tardy incident was considered half an occurrence. *See* N.T. at 7.

[5] Fleet explained that the former plant manager and assistant plant manager left Employer and he assumed responsibilities in December 2018, however it took him time to assimilate all the information and process the paperwork. *See* N.T. at 11-12.

[6] Claimant explained that Employer had night and day shifts available, but he preferred the day shift.

to make sure he was not late for work because of traffic, Claimant responded: "I don't know. I just -- I couldn't do it." N.T. at 14.

Claimant expressed his regret for being tardy for work, but argued that his productivity outweighed the few minutes he was late each time. *See* N.T. at 15-16. Claimant expounded:

> I usually was about, on average, maybe five minutes late. And with the amount, I assume, . . . I don't have the figures on this, but with the amount of money the client made -- because the [chief executive officer] was seemingly doing pretty well. We had a newsletter and there was, like, a -- they showed him in Argentina. I don't think five minutes of overtime pay is significant, and five minutes out of the 12 hours of a shift isn't going to make someone, you know, really, really want to get out of there at all.

N.T. at 16. Claimant presented no evidence relative to Employer's purported failure to uniformly apply its Policy.

This Court has explained: "[T]he [UCBR] is the ultimate fact-finder in [UC] matters[.] . . . Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal." *Sipps*, 181 A.3d at 484 (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted)). "Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion." *Sipps*, 181 A.3d at 484 (quoting *Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999)).

Here, the UCBR adopted the Referee's conclusion based on the evidence:

> [Claimant] deliberately violated [Employer's] [P]olicy and disregarded the standards of behavior which [Employer] has a right to expect of an employee. . . .
>
> [Claimant] testified that his tardiness was due to either oversleeping or traffic. [Claimant] was aware that his job was in jeopardy due to his tardiness but did not believe his

5

tardiness affected the overall production of [Employer]. [Claimant] testified that [Employer's] production numbers were up and did not see where his tardiness by one minute had affected [Employer]. The Referee finds that [Claimant] has not established good cause for his conduct. The Referee finds that [Claimant's] conduct did in fact amount to willful misconduct because he violated [Employer's] [P]olicy, regardless of whether his tardiness affected the overall production of the company. [Claimant's] tardiness affected other employees [] whom [Claimant] was to replace at the end of their shift, and who were unable [to] leave until [Claimant] arrived at work.

Referee Dec. at 2-3. The UCBR added:

On appeal, [Claimant] comments that he believes he should be entitled to benefits despite his violation of [Employer's] tardiness policy, because he assisted in making the [Employer] profitable. [Claimant] also asserts that the scheduling rules were not applied uniformly. However, [Employer] sustained its burden to prove willful misconduct by way of violation of its [P]olicy. [Claimant's] work efforts have no bearing on his eligibility, and he did not prove on the record that the rules were not enforced or nonuniformly applied.

UCBR Dec. at 1.

Based upon this Court's thorough review of the record, there is substantial evidence to support the UCBR's findings and conclusion. Accordingly, this Court holds that the UCBR properly concluded that Claimant committed willful misconduct and, thus, Claimant is not eligible for UC benefits under Section 402(e) of the Law.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keith Horvath,                          :
          Petitioner              :
                                 :
            v.                       :
                                 :
Unemployment Compensation Board         :
of Review,                              :       No. 837 C.D. 2019
          Respondent             :

# O R D E R

AND NOW, this 30th day of January, 2020, the Unemployment Compensation Board of Review's May 8, 2019 order is affirmed.

_____
ANNE E. COVEY, Judge