**PHILADELPHIA PARKING AUTHORITY, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 12, 2010.

Decided July 14, 2010.

Reconsideration Denied Sept. 2, 2010.

Nicholas W. Mattiacci, Philadelphia, for petitioner.

Erin K. Boylan, Asst. Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

The Philadelphia Parking Authority (Employer) appeals from the September 21, 2009, order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's determination that Charlene L. Heeney (Claimant) is not ineligible for benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

Claimant last worked for Employer as a "money room technician," which involved collecting money, distributing money to cashiers, and performing banking transactions. Claimant had previously worked as a supervisor; however, she was hospital-

---

1. Act of December 5, 1936, Second Ex. Session, P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

ized due to uncontrolled diabetes and was unable to work for approximately three months. Because of complications from her medical condition, Claimant could not continue to work as a supervisor, and Employer assigned Claimant to work in the money room.

Working the 3:30 p.m. to midnight shift, Claimant would sit in the money room for hours at a time with nothing to do, and she would get drowsy. (Board's Findings of Fact Nos. 2, 10.) She requested additional work to keep her busy and to prevent her from falling asleep, but, except for two limited assignments, Employer did not provide Claimant with additional work. (Board's Findings of Fact Nos. 11, 12.) Furthermore, when she was hospitalized, Claimant was diagnosed with sleep apnea, a condition that would cause her to fall asleep without realizing it. (Board's Finding of Fact No. 5.) Claimant mentioned this condition to Employer when she returned to work following her hospitalization. (Board's Finding of Fact No. 7.)

Claimant fell asleep in the money room on January 7, 15, 18, and 24 of 2009. (Board's Finding of Fact No. 14.) Pursuant to a work rule that proscribes sleeping on duty, Employer terminated Claimant's employment.

Claimant applied for unemployment compensation benefits; however, the local service center concluded that Claimant engaged in willful misconduct and, thus, was ineligible for benefits. Claimant appealed, and a referee held a hearing at which Claimant and three witnesses for Employer testified. Employer presented evidence to show that Claimant was sleeping on the job, that it had a work rule proscribing sleeping on duty, and that such conduct caused the termination of Claimant's employment. Employer indicated it was aware that Claimant had medical problems, but denied that Claimant had in-

formed it that medical conditions were causing her to fall asleep or to become fatigued. (Reproduced Record (R.R.) at 30a–31a.) In response, Claimant did not deny that she was sleeping, but rather testified that she was diagnosed with sleep apnea, which causes her to fall asleep. Furthermore, Claimant indicated she had long periods on the job with nothing to do and that she informed Employer that she was tiring on the job. Claimant asked to be assigned additional work because it made her less likely to "konk out", but she was only given such work on two occasions. Claimant testified that she did not deliberately go to sleep. (R.R. at 38a–41a.)

Following the hearing, the referee determined that Claimant's actions did not rise to the level of willful misconduct and that she was eligible for benefits. Employer appealed to the Board, which affirmed the referee's decision, reasoning as follows:

> The claimant credibly testified to her health problems and that she had been diagnosed with sleep apnea that caused her to fall asleep without her realizing it. The claimant's testimony regarding her medical condition is sufficient to support that she has sleep apnea and that it caused her to fall asleep. She also credibly testified that she had hours with nothing to do, advised employer of this, and that she was becoming drowsy. The claimant requested additional work from the employer so she would not fall asleep. Except for two brief assignment[s], the employer would not give claimant extra work to do. The claimant admittedly fell asleep while on duty. However, the claimant credibly testified regarding the effect her sleep apnea had on her and that she advised the employer of her sleep apnea in the conference room after she had been advised that

she had been seen asleep on duty. Based upon the claimant's credible testimony, the Board concludes that the claimant had good cause for her conduct, due to her medical condition. The Board notes that the Pennsylvania courts have held that the claimant's credible testimony about her own medical condition is sufficient to support a finding regarding that condition. Accordingly, the claimant is eligible for benefits under the provisions of Section 402(e) of the Law.

(R.R. at 55a.)

■ On appeal to this Court,[2] Employer contends that the Board erred by relying solely on Claimant's testimony to determine that, because Claimant suffered from a medical condition that caused her to fall asleep, her doing so did not constitute willful misconduct.

■ Initially, we note that while the Law does not define "willful misconduct," our courts have defined that term as including: (1) a wanton or willful disregard for an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Moran v. Unemployment Compensation Board of Review*, 973 A.2d 1024 (Pa.Cmwlth.2009). Where the claimant is discharged for a work rule violation, the employer has the burden to show that the claimant was aware that the work rule existed and that the claimant violated the rule. *Roberts v. Unemployment Compensation Board of Review*, 977 A.2d 12 (Pa. Cmwlth.2009). Moreover, the employer must also establish that the claimant's actions were intentional or deliberate, *Tongel v. Unemployment Compensation Board of Review*, 93 Pa.Cmwlth. 524, 501 A.2d 716 (1985), and the employee's actions must be considered in light of all of the circumstances, including the reasons for his or her noncompliance with the employer's directives. *Navickas v. Unemployment Compensation Board of Review*, 567 Pa. 298, 787 A.2d 284 (2001).

■ If the employer meets its burden, the burden then shifts to the claimant to demonstrate good cause for her conduct. *Department of Corrections v. Unemployment Compensation Board of Review*, 943 A.2d 1011 (Pa.Cmwlth.2008). Physical illness can constitute good cause for a claimant's noncompliance with an employer's directive. *Brillhart v. Unemployment Compensation Board of Review*, 67 Pa.Cmwlth. 437, 447 A.2d 697 (1982). To establish such a claim, a claimant is not required to produce expert testimony, but rather need only introduce "competent evidence":

> The distinction between 'competent evidence' ... and the 'competent medical evidence' requirement articulated in the opinion of the court below is vital. *The former is a broader standard which allows an applicant to meet the burden with his own testimony and supporting documents.* The latter is a more stringent requirement which could result in the denial of benefits simply because an applicant fails to provide the expert testimony of a physician even where such testimony would be superfluous or cumulative. The broader standard more effectively comports with this substantial evidence. *Thompson v. Unemployment Compensation Board of Review*, 723 A.2d 743 (Pa.Cmwlth.1999).

2. Our scope of review is limited to determining whether constitutional rights were violated, whether errors of law were committed, or whether findings of fact are supported by

Court's view that the Unemployment Compensation Law must be liberally and broadly construed.

*Steffy v. Unemployment Compensation Board of Review*, 499 Pa. 367, 372, 453 A.2d 591, 594 (1982) (emphasis added). This Court subsequently interpreted *Steffy* to allow a claimant to satisfy his or her burden of production by presenting her testimony *and/or* supporting documents. *Lee Hospital v. Unemployment Compensation Board of Review*, 161 Pa.Cmwlth. 464, 637 A.2d 695 (1994); *Judd v. Unemployment Compensation Board of Review*, 91 Pa.Cmwlth. 372, 496 A.2d 1377 (1985). In *Goettler Distributing, Inc. v. Unemployment Compensation Board of Review*, 96 Pa.Cmwlth. 632, 508 A.2d 630 (1986), this Court expressly concluded that the disjunctive "and/or" interpretation of *Steffy* was the better analysis and was consistent with the broad and liberal interpretation of the Law.[3]

In this case, we need not address whether Claimant's testimony alone was sufficient competent evidence to prove good cause. After a careful review of the record and the Board's findings of fact, we conclude that Employer failed to meet its initial burden to prove that Claimant deliberately violated Employer's work rule.

The record reveals that Claimant's position involved sitting in the money room for hours with nothing to do and that she would get drowsy. Claimant recognized the problem and attempted to address it by informing Employer that she was tiring and asking for additional work to keep her busy and alert. (Board's Findings of Fact Nos. 10, 11.) However, with the exception of two small assignments, Employer did not provide her with additional work or take any other action to remedy the situation. (Board's Finding of Fact No. 12.) Although Claimant fell asleep during her shift, Claimant attempted to resolve her drowsiness problem in a responsible manner that protected the interests of Employer. Considering Claimant's actions in light of all of the circumstances of this case, we conclude that Employer failed to prove that Claimant deliberately or intentionally violated its work rules by sleeping during her shift.

Because Employer failed to meet its initial burden, the burden never shifted to Claimant to demonstrate good cause for her actions, and we need not address whether Claimant's testimony was sufficient to establish that medical problems provided her with good cause for sleeping on the job. We will affirm an order of a lower tribunal where the result is correct, even if the reason given is erroneous, where the correct basis for the decision is apparent on the record. *Markby v. Unemployment Compensation Board of Review*, 129 Pa.Cmwlth. 176, 564 A.2d 1340 (1989); *Pare v. Workmen's Compensation Appeal Board (Fred S. James & Co.)*, 97 Pa.Cmwlth.435, 509 A.2d 1361 (1986).

Accordingly, we affirm.

### ORDER

AND NOW, this 14th day of July, 2010, the September 21, 2009 order of the Un-

---

**3.** We observe that, as explained in the vigorous dissent of President Judge Crumlish, the majority opinion in *Goettler* applies an expansive interpretation of *Steffy* to hold that the claimant's testimony alone was "competent evidence of a health-based necessitous and compelling cause for her quit." *Goettler*, 508 A.2d at 632 (Crumlish, J., dissenting). See also *Bonanni v. Unemployment Compensation Board of Review*, 102 Pa.Cmwlth. 541, 519 A.2d 532, 535 n. 1 (1986) (stating that, pursuant to *Goettler*, a claimant's testimony alone is sufficient to establish a commonplace health problem as necessitous and compelling cause for a voluntary quit). This is a matter that the Court may wish to revisit in an appropriate case.

employment Compensation Board of Review is hereby affirmed.

## CONCURRING OPINION BY
President Judge LEADBETTER.

I concur in the result reached by the majority. However, when a claimant asserts that she has unintentionally violated a work rule because of a medical condition, I believe that competent evidence of that condition is needed whether the case is analyzed under the "good cause" standard or the "willfulness" standard, so we must address the competency of the claimant's evidence in either event.

Moreover, I believe that, ordinarily, corroborative medical evidence, either documentary or testimonial, should be required, or at least some corroborating circumstances. Thus, I would revisit those prior published opinions which suggest, in *dicta*,[1] that the claimant's testimony alone is sufficient as a matter of law. I would not do so here, however, for two reasons. Arguably, medical condition or not, anyone left alone in a room for hours on end late at night with nothing to do might well fall asleep unintentionally. Second, because of this claimant's significant prior medical history and pre-termination complaints to employer, I would find her credited testimony to be sufficient.

---

1. I note that even in those cases discussed by the majority, such as *Goettler v. Unemployment Comp. Bd. of Rev.*, 96 Pa.Cmwlth. 632, 508 A.2d 630 (1986), in which we have said either the claimant's testimony or documentary evidence was sufficient, there was some corroborating documentation in addition to the claimant's testimony. *See also, Judd v. Unemployment Comp. Bd. of Rev.*, 91 Pa. Cmwlth. 372, 496 A.2d 1377 (1985).